**In re ESTATE OF Paul J. SAUERS, III, Deceased.**

**Appeal of Jodie L. Sauers.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2008.
Filed April 17, 2009.

James G. Keenan, York, for appellant.

David A. Mills, York, for appellee.

BEFORE: STEVENS, MUSMANNO, KLEIN, BENDER, BOWES, GANTMAN, SHOGAN, FREEDBERG and CLELAND, JJ.

OPINION BY FREEDBERG, J.:

¶ 1 This matter is before the Court on an appeal from the order entered in the Court of Common Pleas for York County directing Jodie L. Sauers ("Appellant") to surrender all of the life insurance proceeds which she received following the death of her former husband. We affirm.

¶ 2 Pursuant to an employee group benefit plan, effective June 1, 1997, Paul J. Sauers, III, ("Decedent") obtained a $40,000.00 life insurance policy issued by the Hartford Life Insurance Company ("Insurer"). There is no dispute that the insurance policy is part of an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* On June 27, 1998, Decedent married Jodie L. Sauers ("Appellant"). On October 13, 1998, Decedent named Appellant as beneficiary and his nephew, Ian D. Rehn ("Nephew"), as contingent beneficiary. On June 11, 2002, Decedent and Appellant divorced. Decedent died on September 19, 2006. He had not changed the designation of Appellant as beneficiary. In accordance with plan documentation, Insurer paid to Appellant $40,000.00 on March 19, 2007.

¶ 3 On September 26, 2006, William F. Sauers ("Administrator") received letters of administration for the estate of Decedent. On February 16, 2007, Administrator filed a petition requesting Appellant to show cause why she should not relinquish all interest and title to the proceeds of Decedent's life insurance policy for the benefit of Nephew. Appellant filed preliminary objections on March 30, 2007. The trial court overruled Appellant's preliminary objections on April 27, 2007. Appellant filed a motion to dismiss on April 25, 2007. On May 16, 2007, the trial court denied Appellant's motion to dismiss and directed Appellant to surrender the life insurance proceeds to Nephew.

¶ 4 Appellant filed a notice of appeal on June 15, 2007. On June 25, 2007, the trial court ordered Appellant to file a statement of matters complained of on appeal. Appellant filed a Pa.R.A.P. 1925(b) statement

on July 5, 2007. The trial court filed a Pa.R.A.P. 1925(a) statement on July 16, 2007.

¶ 5 Appellant raises three questions for our consideration: (1) whether ERISA pre-empts 20 Pa.C.S.A. § 6111.2, a beneficiary re-designation statute; (2) whether the Administrator lacked the capacity to bring this suit; and (3) whether the petition brought by the Administrator should have been dismissed for lack of subject matter jurisdiction. We address each question in turn.

¶ 6 Appellant contends that the trial court erred in not concluding that ERISA pre-empts 20 Pa.C.S.A. § 6111.2 which provides:

> If a person domiciled in this Commonwealth at the time of his death is divorced from the bonds of matrimony after designating his spouse as beneficiary of a life insurance policy, annuity contract, pension or profit-sharing plan or other contractual arrangement providing for payments to his spouse, any designation in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased him unless it appears from the wording of the designation, a court order or a written contract between the person and such former spouse that the designation was intended to survive the divorce. Unless restrained by court order, no insurance company, pension or profit-sharing plan trustee or other obligor shall be liable for making payments to a former spouse which would have been proper in the absence of this section. Any former spouse to whom payment is made shall be answerable to anyone prejudiced by the payment.

20 Pa.C.S.A. § 6111.2.

██ ¶ 7 This is a question of law subject to plenary review. *See C.B. ex rel. R.R.M.*

*v. Com., Dept. of Public Welfare,* 567 Pa. 141, 786 A.2d 176, 180 (2001) (noting that "the proper interpretation and interplay of statutes" is a question of law).

██ ¶ 8 Federal pre-emption originates in the Supremacy Clause of the United States Constitution. U.S. Const. Art. VI, cl. 2. "Congress has the undisputed power to pre-empt state law in areas of federal concern." *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien,* 589 Pa. 296, 908 A.2d 875, 880 (2006), *citing Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). In those areas traditionally regulated by the states, "it should be presumed that Congress did not intend to supersede state authority absent a clear and manifest legislative purpose to the contrary." *Stone Crushed Partnership,* 908 A.2d at 880. There are three forms of federal pre-emption:

> First, state law may be pre-empted where the United States Congress enacts a provision which expressly pre-empts the state enactment. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be pre-empted where a state law conflicts with a federal law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at 881 (internal citations omitted). Because the ERISA statute explicitly defines the extent of its pre-emptive power, we are dealing with express pre-emption in this case.

¶ 9 In *Egelhoff v. Egelhoff, ex rel. Breiner*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), the scope of ERISA pre-emption was discussed as follows:

ERISA's pre-emption section, 29 U.S.C. § 1144(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. We have observed repeatedly that this broadly worded provision is clearly expansive. But at the same time, we have recognized that the term "relate to" cannot be taken to extend to the furthest stretch of its indeterminacy, or else for all practical purposes pre-emption would never run its course.

We have held that a state law relates to an ERISA plan if it has a connection with or reference to such a plan. Petitioner focuses on the "connection with" part of this inquiry. Acknowledging that "connection with" is scarcely more restrictive than "relate to," we have cautioned against an uncritical literalism that would make pre-emption turn on infinite connections. Instead, to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.

*Egelhoff*, 532 U.S. at 146–147, 121 S.Ct. 1322 (internal citations and quotations omitted).

¶ 10 A principal objective of ERISA is "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff* at 148, 121 S.Ct. 1322, *quoting Fort Halifax Packing Company v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). ERISA directs fiduciaries to administer a plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Any state law which undermines this goal is subject to pre-emption.

¶ 11 In *Egelhoff*, children from an intestate's first marriage sued intestate's second wife whose marriage to intestate had been dissolved shortly before his death, claiming entitlement to life insurance proceeds and pension plan benefits. Washington had a beneficiary re-designation statute which provided:

If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.

Wash. Rev.Code § 11.07.010(2)(a) (1994).

¶ 12 Because the Washington statute required that plan administrators "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents," the statute implicated an area of core ERISA concern. *Egelhoff* at 147, 121 S.Ct. 1322. Thus, the Supreme Court found that the state statute ran counter to ERISA's provisions that a plan shall "specify the basis on which payments are made to and from the plan," *Id., quoting* 29 U.S.C. § 1102(b)(4), and that the plan fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," *Id., quoting* 29 U.S.C. § 1104(a)(1)(D), making payments to a beneficiary "designated by a participant or by the terms of the plan." *Id., quoting* 29 U.S.C. § 1002(8). In addition, the Washington statute interfered with the objective of a nationally uniform plan ad-

ministration. "Uniformity is impossible, ... if plans are subject to different legal obligations in different states." *Id.* at 148, 121 S.Ct. 1322.

¶ 13 Unlike the Washington statute, Section 6111.2 ensures that Pennsylvania's re-designation statute has no impact on ERISA plan administrators. Thus, the second sentence of the statute provides: "Unless restrained by court order, no insurance company, pension or profit sharing plan trustee, or other obligor shall be liable for making payments to a former spouse which would have been proper in the absence of this section." 20 Pa.C.S.A. § 6111.2. ("prior restraint clause"). Plan documents continue to control the administration, and the objective of a national uniform administrative format is maintained. Because of the expansive nature of the immunization, the Pennsylvania statute has no effect on the administration of ERISA plans.[1] Therefore, we hold that Section 6111.2 is not pre-empted by ERISA. There is no need for preemption by ERISA because there is no conflict between ERISA and state law.

¶ 14 The Dissent is concerned that the reference to restraint by court order in Section 6111.2 authorizes court orders "restrain[ing] a plan fiduciary prior to distribution of plan benefits." This concern is not well founded. *Egelhoff* holds that, except as expressly authorized by ERISA, judicial re-designation of plan proceeds is pre-empted. *See Egelhoff* at 149–150 n. 3, 121 S.Ct. 1322 (suggesting that court intervention increases costs and creates unwanted delay and uncertainty). Thus, *Egelhoff* forecloses the possibility of a court order to a plan administrator requiring distribution of "the plan proceeds either into court or to a person who is not the plan beneficiary."

¶ 15 The prior restraint clause envisions a far narrower grant of judicial authority. Qualified domestic relations orders [QDROs] are expressly provided for by ERISA. *See* 29 U.S.C.A. §§ 1056(d)(3)(A) (excepting QDROs from the prohibition against assignment or alienation), 1056(d)(3)(J) (providing that a "person who is an alternate payee under a [QDRO] shall be considered for purposes of any provision of [ERISA] a beneficiary under the plan."). The Supreme Court of the United States has recently recognized that ERISA enforcement of QDROs effectively provides an exception to the general rule that administrators rely solely upon plan documents. *See Kennedy v. Plan Administrator for DuPont Savings and Investment Plan,* —— U.S. ——, at ——, 129 S.Ct. 865, 876, 172 L.Ed.2d 662, 2009 WL 160440, at *9 (2009) (quoting from Section 1056(d)(3)(J) and stating, "But this in effect means that a plan administrator who enforces a QDRO must be said to enforce plan documents, not ignore them.").

¶ 16 In concluding that the re-designation clause of Section 6111.2 is preempted by ERISA, the Dissent cites favorably *Metropolitan Life Ins. Co. v. Walsh,* 892 F.Supp. 671 (W.D.Penn.1995) ("*Walsh*"), wherein the federal district court held that ERISA pre-empts Section

1. The Washington statute had a more limited immunization provision which protected plan administrators from liability for making payments to the named beneficiary unless they had "actual knowledge of the dissolution or other invalidation of marriage;" also, it permitted administrators to refuse to make payments until resolution of any dispute among claimants to the benefits. The Supreme Court commented that administrators were subjected to a risk that a court might hold that payments were made with "actual knowledge" of a divorce. Further, waiting to pay benefits until resolution of the dispute among claimants would "simply transfer to the beneficiaries the costs of delay and uncertainty." *Egelhoff* at 149, 121 S.Ct. 1322. Section 6111.2 has no such limitations on its grant of immunity.

6111.2.[2] Decisions of a federal district court, while deserving of respectful consideration, are not controlling precedent. *See Carbis Walker, LLP v. Hill, Barth and King, LLC,* 930 A.2d 573, 581 n. 9 (Pa.Super.2007). Further, the brief discussion of the issue by the district court predates the United States Supreme Court's adoption of a narrower interpretation of the impact of the "relate to" preemption standard in ERISA. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655–656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Egelhoff* at 147, 121 S.Ct. 1322; *compare Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).[3]

¶ 17 In summary, the Pennsylvania legislature accomplished the policy objective of re-designation of beneficiaries after divorce. It did so while enabling ERISA plan administrators to perform their functions as specified in ERISA and without limitation by Pennsylvania law. Finally, by providing that a former spouse who receives payment is "answerable to anyone prejudiced by the payment," 20 Pa.C.S.A. § 6111.2, it has established a basis for resolution of disputes between claimants which does not impact on plan administrators.[4] Therefore, Section 6111.2 is not pre-empted by ERISA.

■ ¶ 18 Appellant also contends that the trial court erred in overruling her pre-

---

**2.** The *Walsh* decision mirrors that in *Metropolitan Life Insurance Company v. Hanslip,* 939 F.2d 904 (10th Cir.1991), cited by the Dissent at p. 1276. The Oklahoma statute at issue in the *Hanslip* case is significantly different than Section 6111.2 in that the Oklahoma statute does not insulate plan administrators from liability for implementing a plan according to its documents, nor does it create a cause of action for persons prejudiced by an inappropriate payment or assign liability to the named beneficiary. *Walsh,* 892 F.Supp. at 674 n. 1, *quoting* 15 Okl.St.Ann. § 178.

**3.** The *Walsh* decision cites to the United States Supreme Court case, *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), thus incorporating that case's analysis of the "relate to" phrase which defines the scope of ERISA pre-emption. *See Ingersoll–Rand Co.,* 498 U.S. at 139, 111 S.Ct. 478 ("Under this broad, common-sense meaning, a state law may relate to a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."). However, subsequent to *Ingersoll–Rand,* the Supreme Court has adopted a narrower interpretation of the "relate to" phrase.

If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere. But that,

of course, would be to read Congress's words of limitation as a mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655–656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (internal citation omitted) (concluding that the statutory language is unhelpful and a proper analysis requires an evaluation of the objectives of the ERISA statute).

**4.** The dispute resolution provision provides a remedy comparable to a constructive trust as advocated in Sarabeth A. Rayho, Note, *Divorcees Turn About in Their Graves as Ex-Spouses Cash In: Codified Constructive Trusts Ensure Equitable Results Regarding ERISA–Governed Employee Benefit Plans,* 106 Mich. L.Rev. 373 (2007); *see also Kennedy v. Plan Administrator for DuPont Savings and Investment Plan,* — U.S. —, at — n. 10, 129 S.Ct. 865, 875, n. 10, 172 L.Ed.2d 662, 2009 WL 160440, at *8 n. 10 (2009) (declining to express any view regarding "whether the [estate] could have brought an action in state or federal court against [former spouse] to obtain benefits after they were distributed.").

liminary objections that the Administrator lacked the capacity to bring this suit and that the trial court lacked subject matter jurisdiction to hear it. "This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion." *Clemleddy Const., Inc. v. Yorston,* 810 A.2d 693, 696 (Pa.Super.2002), *citing Denlinger, Inc. v. Agresta,* 714 A.2d 1048, 1050 (Pa.Super.1998).

¶ 19 Appellant's contention regarding the Administrator's lack of capacity is based entirely upon the alleged pre-emption of Section 6111.2 by ERISA. *See* Brief of Appellant, p. 17. Because ERISA does not pre-empt Section 6111.2, we conclude that this claim is without merit.

¶ 20 Finally, Appellant contends that the trial court lacked subject matter jurisdiction. The Pennsylvania Probate, Estate and Fiduciary Code vests the orphans' court division with mandatory jurisdiction in the "administration and distribution of the real and personal property of decedents' estates" and the "adjudication of the title to personal property" of the decedent or his nominee. 20 Pa.C.S.A. § 711(1) and (7) (respectively). A life insurance policy is an asset of the estate; therefore, it is subject to the administration of the estate.

> [O]ur Supreme Court has held that even though life insurance proceeds are not estate assets, the life insurance policies producing the proceeds are personal property of the decedent in his possession at death, vesting the Orphan's Court with jurisdiction to order the appropriate delivery of the proceeds.

*In re Shahan,* 429 Pa.Super. 91, 631 A.2d 1298, 1302 (1993), *citing In re Henderson's Estate,* 395 Pa. 215, 149 A.2d 892 (1959). Accordingly, we find that the trial court properly exercised its jurisdiction over this matter.

¶ 21 The Order of the trial court is affirmed.

¶ 22 Judge CLELAND concurs in the result.

¶ 23 Judge BOWES files a Concurring/Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY BOWES, J.:

¶ 1 In this matter, we must determine whether the Employee Retirement Income Security Act OF 1974 ("ERISA") preempts 20 Pa.C.S. § 6111.2, effect of divorce on designation of beneficiaries, to the extent that section applies to an ERISA-covered plan.

¶ 2 That provision states:

> If a person domiciled in this Commonwealth at the time of his death is divorced from the bonds of matrimony after designating his spouse as beneficiary of a life insurance policy, annuity contract, pension or profit-sharing plan or other contractual arrangement providing for payments to his spouse, **any designation in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased him** unless it appears from the wording of the designation, a court order or a written contract between the person and such former spouse that the designation was intended to survive the divorce. **Unless restrained by court order, no insurance company, pension or profit-sharing plan trustee or other obligor shall be liable for making payments to a former spouse** which would have been proper in the absence of this section. **Any former spouse to whom**

**payment is made shall be answerable to anyone prejudiced by the payment.** 20 Pa.C.S. § 6111.2 (emphases added).

¶ 3 I will refer to the first bolded portion of this section as the "redesignation clause," the second emphasized part as the "prior restraint clause" and the final bolded segment as the "remedy clause." I respectfully disagree with the majority's conclusion that the redesignation clause and the prior restraint clause are not preempted by ERISA; however, I concur with the majority's analysis to the extent that it holds that the remedy clause is not preempted.[1]

¶ 4 "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). A state law relates to an ERISA plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). "[T]o determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (internal quotation marks and citation omitted). The preemptive power of ERISA, although "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), does have its

limitations. In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the United States Supreme Court recognized that "some State actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. at 100, 103 S.Ct. 2890. *See also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for really, universally, relations stop nowhere[.]") (citation and internal quotations marks omitted).

¶ 5 In ERISA, a "beneficiary" is defined as the person who is entitled to the benefit as either designated by the participant or by the employee benefit plan. 29 U.S.C. § 1002(8). An ERISA fiduciary is required to "discharge his duties with respect to a plan" solely in the interest of the "participants" and "beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

¶ 6 In my view, the redesignation clause is clearly and unequivocally preempted because it requires a fiduciary of an employee benefit plan covered by ERISA to discharge his duties with respect to a plan in a manner that is contrary to the documents and instruments governing the plan. It mandates the plan's designation of its beneficiary to be rendered "ineffective for all purposes" and directs the plan administrator to "construe" a particular plan beneficiary in a manner contrary to the specific terms contained in the plan document.

---

1. I also agree with the majority's conclusion that Appellant's final two claims are meritless.

The redesignation clause of section 6111.2 thus "relates to" an ERISA-covered plan because it requires distribution of plan assets in a manner that is inconsistent with plan documents.

¶ 7 The prior restraint clause is also preempted because it expressly envisions that a court can restrain a plan fiduciary prior to distribution of plan benefits. It thereby exposes a plan fiduciary to a court action regarding a proposed distribution of plan benefits, and in derogation of the plan documents, would permit a court to order the fiduciary to distribute the plan proceeds either into court or to a person who is not the plan beneficiary. A fiduciary subjected to such a court action would incur attorney's fees, at the expense of the plan and its remaining participants and beneficiaries, and could be required to distribute plan assets in a manner that is contrary to the plan documents.

¶ 8 The United States Supreme Court case of *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), is controlling. Therein, the decedent/husband was employed by a company that provided him with a life insurance policy and pension plan that were both governed by ERISA. While married, decedent designated his wife as beneficiary under both plans. Two months after their subsequent divorce, the husband died intestate, having failed to change his beneficiary designation under the life insurance policy and pension plan. The ERISA plan paid the life insurance proceeds to decedent's former spouse.

¶ 9 Decedent's children by a previous marriage were his intestate heirs under the applicable laws of the state of Washington. They instituted an action against the former wife to recover the life insurance proceeds and pension plan benefits, relying upon a statute similar to the one at issue in this case. The Washington statute provided that once a marriage was invalidated "a provision made prior to that event" relating to the "payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked." The statute continued by redesignating the recipient of the asset to those who would have received the asset if the former spouse had died. Nonprobate assets were defined to include both a life insurance policy and an employee benefit retirement plan. A plan administrator was protected from liability under the statute if the administrator paid plan assets without "actual knowledge" that the marriage was no longer valid.

¶ 10 The former spouse argued that the statute was preempted by ERISA. The United States Supreme Court agreed with the former wife. It held that ERISA expressly preempted the statute in question for three discrete reasons. It first concluded that the statute was preempted because it required "ERISA plan administrators" to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* at 147, 121 S.Ct. 1322. The Court found that requirement to conflict with section 1102(b)(4), which requires the plan to "specify the basis on which payments are made to and from the plan," and section 1104(a)(1)(D), which mandates that the plan fiduciary administer the plan "in accordance with the documents and instrument governing the plan." *Id.* The statute was ruled invalid because it governed "the payment of benefits, a central matter of plan administration." *Id.* at 148, 121 S.Ct. 1322. The Court held that "the statute at issue here directly" conflicted with ERISA's mandates that "plans be administered, and benefits be paid, in accordance with plan documents." *Id.* at 150, 121 S.Ct. 1322.

¶ 11 Second, the United States Supreme Court ruled that the Washington statute

had a prohibited connection with ERISA plans by interfering with nationally-uniform plan administration, another goal of ERISA. It noted that plan administration standardization is not possible if plans are subject to "different legal obligations in different States." *Id.* at 148, 121 S.Ct. 1322. The Court opined, "The Washington statute at issue here poses precisely that threat. Plan administrators cannot make payments simply by identifying the beneficiary specified by the plan documents. Instead they must familiarize themselves with state statutes so that they can determine whether the named beneficiary's status has been 'revoked' by operation of law." *Id.* at 148–49, 121 S.Ct. 1322 (footnoted omitted).

¶ 12 Finally, the Court held that ERISA was violated by the state statute in question because it imposed additional financial burdens on ERISA-covered plans. The Court observed that the statute required ERISA administrators to both familiarize themselves with the laws of fifty states and to "contend with litigation." The Court continued that the Washington statute thereby undermined "the congressional goal [in enacting ERISA] of 'minimizing the administrative and financial burdens' on plan administrators-burdens ultimately borne by the beneficiaries." *Id.* at 149–50, 121 S.Ct. 1322 (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

¶ 13 The Court was not persuaded that the statute was saved from preemption by insulating plan administrators from liability if they paid benefits without actual knowledge of the invalidity of the marriage. It noted that the statute still subjected those administrators to the "risk that a court might later find that they had 'actual knowledge' of a divorce." The Court similarly was unconvinced that the statute was not preempted because it permitted plan documents to be modified to, opt out of the statute's provisions. It reasoned that the opt out provision still required a modification of plan language.

¶ 14 Finally, the Court expressly rejected the position that the statute in question was saved against preemption because it pertained to "both family law and probate law, areas of traditional state regulation." *Id.* at 151, 121 S.Ct. 1322. It noted that the presumption against preemption of time-honored areas of state concern is overcome if Congress has evidenced its desire for preemption. The Court observed that state family law will be preempted "if it conflicts with ERISA or relates to ERISA plans." *Id.* (citing *Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (ERISA preempts state community property law that allowed testamentary transfer of an interest in a pension plan benefit)).

¶ 15 I therefore must conclude that, under *Egelhoff,* the redesignation clause of 20 Pa.C.S. § 6111.2 is preempted because it alters the beneficiary who is entitled to receive plan assets from the designated beneficiary under the plan instruments. That clause states that "any designation in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased him." The parallel section of the Washington state law that was preempted provides, "A provision affected by this section must be interpreted as if the former spouse has failed to survive the decedent." Both statutes treat the former spouse as predeceased and require distribution of the asset to those who would have received the benefit under state law once the former spouse is so treated. The clauses are indistinguishable in operation. Thus, just as the Washington statute in *Egelhoff* did, this portion of 20 Pa.C.S. § 6111.2 "runs counter to ERISA's com-

mand ... that the fiduciary shall administer the plan in accordance with the documents and instruments governing the plan." *Egelhoff,* 532 U.S. at 147, 121 S.Ct. 1322 (internal quotation marks and citation omitted).

¶ 16 Moreover, by directing payment to a beneficiary not listed in the plan document, the redesignation clause of 20 Pa. C.S. § 6111.2 interferes with nationwide uniform plan administration since it requires plan administrators to familiarize themselves with potentially conflicting state statutes to determine beneficiary status. *Egelhoff,* 532 U.S. at 148–49, 121 S.Ct. 1322. Hence, the redesignation clause of 20 Pa.C.S. § 6111.2 is sufficiently analogous to the Washington statute at issue in *Egelhoff.*

¶ 17 Similarly, the prior restraint clause is preempted by ERISA because it allows a fiduciary to be named as a party in a court action and to be restrained by court order. It thereby exposes a plan fiduciary to court action and litigation costs, which burden the plan. This conflicts with ERISA's stated congressional goal "of minimizing the administrative and financial burdens on plan administrators-burdens ultimately borne by the beneficiaries." *Egelhoff, supra* at 149–50, 121 S.Ct. 1322 (internal quotation marks and citation omitted). The prior restraint clause may also result in an order requiring a plan administrator to pay plan benefits to someone not entitled to those benefits under the plan documents. The fact that the plan administrator is not liable for distributing plan assets under the plan documents unless restrained by court order does not save section 6111.2 from being preempted because, as noted, under the Washington statute reviewed by the United States Supreme Court, plan administrators were similarly immune from liability if they distributed plan assets without knowledge of the divorce.

¶ 18 The preemptive operation of section 6111.2 is best illustrated by *Metropolitan Life Insurance Co. v. Walsh,* 892 F.Supp. 671 (W.D.Pa.1995). In that case, the action was filed by the fiduciary of an ERISA employee benefit plan. The fiduciary sought a declaration that it was justified in paying a death benefit due under a life and disability benefits program to the decedent/participant's former wife. When the participant had died, his ex-wife, from whom he had been divorced for thirty years, remained the named beneficiary under the beneficiary designation form on file with the plan fiduciary, and the plan documents mandated that the benefits be paid to the beneficiary named on that form. The decedent's current spouse also sought the benefits. Both women acknowledged that under the terms of the applicable ERISA plan, the ex-wife was entitled to them.

¶ 19 The current spouse averred that the designation was rendered void under 20 Pa.C.S. § 6111.2. The former wife countered that section 6111.2 was preempted by ERISA, and the district court agreed because section 6111.2 related to an ERISA-covered plan. The Court adopted the stance that "Pennsylvania" is "not in a position to alter the provisions of an ERISA plan." *Id.* at 675. It awarded the benefits to the former spouse.

¶ 20 The *Walsh* court relied upon *Metropolitan Life Insurance Co. v. Hanslip,* 939 F.2d 904 (10th Cir.1991), where an ERISA plan fiduciary had been sued after distributing life insurance proceeds to its deceased participant's ex-spouse, who remained beneficiary under applicable plan documents. The plaintiff was the decedent's estate, which should have received the insurance proceeds under a state statute that, as does section 6111.2, invalidated an insurance beneficiary designation in favor of a spouse upon divorce. The Tenth

Circuit held that the state law was preempted as applied to an ERISA-plan because it "related" to such plan by affecting the designated beneficiary of plan assets. It granted summary judgment in favor of the plan fiduciary.

¶ 21 Thus, in *Walsh,* faced with 20 Pa. C.S. § 6111.2, the plan fiduciary was forced to bring an action seeking guidance about to whom it should pay benefits. In so doing, the fiduciary incurred litigation costs and attorney's fees at the expense of other plan beneficiaries and participants. If the district court had not adopted the magistrate's position, the plan fiduciary would have been forced to pay plan benefits to someone not entitled to them under the documents governing the plan. Both of these scenarios are prohibited under the *Egelhoff* decision.

¶ 22 It is my firm conclusion that the redesignation and prior restraint clauses of section 611.2 are preempted to the extent they are applicable to an ERISA-covered plan. They mandate that the proceeds of an ERISA-covered plan be distributed in derogation of plan documents and expose plan administrators to the burden of familiarizing themselves with various state laws and the potential for litigations costs.

¶ 23 However, in my view, the remedy clause of section 6111.2 is not preempted by ERISA. The remedy clause of section 6111.2 provides, "Any former spouse to whom payment is made shall be answerable to anyone prejudiced by the payment." By declaring the redesignation and prior restraint clauses inoperative as to ERISA-covered plans, we would thus free ERISA plan administrators to distribute plan assets in accordance with the terms of the plan and from any risk of being hauled into court. Then, the remedy clause, operating independently, permits the redesignated beneficiary to seek redress directly against the former spouse.

¶ 24 The Washington statute at issue in *Egelhoff* did not have a similar remedial provision. The remedy clause of section 6111.2 has no effect on an ERISA-covered plan and allows it to operate uninterrupted and without the threat of litigation. As long as the redesignation and prior restraint clauses are inapplicable to an ERISA-covered plan, the remedy provision, in and of itself, does not require the plan administrator to pay the proceeds to anyone other than the plan beneficiary, does not require the plan administrator to ascertain a beneficiary under state law, and does not expose the plan to court action.

¶ 25 Once the plan assets are so distributed, the redesignation clause becomes operative as to the former spouse and enforceable through the remedy provision. The remedy provision applies only after the plan benefits have been distributed and renders the recipient of those benefits, and only the recipient of the benefits, answerable in court. Indeed, the remedy provision of section 6111.2 actually envisions that the plan administrator has distributed the plan assets as required by the plan document. It should not be considered preempted.

¶ 26 Several decisions are instructive. In *Central States, Southeast and Southwest & Areas Pension Fund v. Howell,* 227 F.3d 672, 678–79 (6th Cir.2000), an ERISA plan administrator instituted the action seeking a declaration of who was entitled to insurance proceeds payable from an ERISA-covered plan. The decedent had violated an injunction issued in a divorce court that restricted him from changing his beneficiary designation of the insurance benefits from his wife during the pendency of the court action. He had changed the beneficiary from his wife to his children, who had sought the life insurance proceeds.

¶ 27 The Sixth Circuit Court of Appeals first acknowledged that the divorce court injunction was ineffective and was preempted by ERISA to the extent that it attempted to alter the beneficiary of benefits payable under the terms governing an ERISA-covered plan. However, the Court concluded that the wife was entitled to the equitable remedy of imposition of a constructive trust on the ERISA plans proceeds. It reasoned that ERISA does not preempt causes of action and possible remedies based upon state law that attach **after** the ERISA-plan proceeds are distributed to the beneficiaries as mandated by the plan documents. The court held that "once the benefits of an ERISA employee's welfare benefit plan have been distributed according to the plan documents, ERISA does not preempt the imposition of a constructive trust on those benefits." *Id.* at 678.

¶ 28 Similarly, in *Sweebe v. Sweebe*, 474 Mich. 151, 712 N.W.2d 708 (2006), a decedent's former spouse had been paid the proceeds of life insurance proceeds from an ERISA-covered plan because she was the named beneficiary of those proceeds under the plan documents. The decedent's estate claimed those proceeds, and the Supreme Court of Michigan permitted the estate to recover them against the former spouse because she had waived the right to receive insurance proceeds in the divorce action.

¶ 29 The Court concluded that ERISA did not preempt the action because the plan administrator properly distributed the life insurance policy to the named beneficiary in accordance with the plan documents and mandates of ERISA. It ruled, "There is no invasion into the requirements of ERISA because the plan administrator distributed the proceeds to the named beneficiary, as required by ERISA. However, after the plan administrator distributed the proceeds as required by

ERISA, a [state law] claim could then be filed against the named beneficiary alleging that she waived her right to retain the proceeds." *Id.* at 713; *see also Pardee v. Pers. Representative for Estate of Pardee,* 112 P.3d 308, 314 (Okla.Civ.App.2004) (once ERISA pension plan distributed assets in accordance with plan documents, assets could be subjected to constructive trust under state law as to recipient; "ERISA does not protect pension funds after the beneficiary receives the funds").

¶ 30 Although ERISA regulates the establishment and operation of plan administration and the distribution of benefits, it does not govern the rights to and ownership of benefits once they are disbursed to the named beneficiary. As such, the remedy provision of 20 Pa.C.S. § 6111.2, on its face and as applied to the particular facts of this case, does not have an impermissible "connection with" ERISA plans. The remedy provision of § 6111.2 solely governs a divorced spouse's right to retain insurance proceeds after receiving them from the plan administrator; consequently, this statutory clause fails to operate in a manner that alters the administrator's ability to make payment to a named beneficiary or interferes with the overall goal of uniform plan administration nor does it risk subjecting a plan administrator to a court action. As the underlying concerns espoused in *Egelhoff* are not implicated in this case, any impact the remedy provision has on an ERISA plan is too tenuous and peripheral to warrant the conclusion that it is preempted. The remedy provision of section 6111.2 does not run afoul of the United States Supreme Court's pronouncement in *Egelhoff.*

¶ 31 Furthermore, I believe that the remedy provision is severable from the portions of section 6111.2 that are preempted. As noted by the majority, preemption is grounded upon the Suprem-

acy Clause in the United States Constitution. "Whether or not one part of a statute can survive the excision of another part which has been held invalid is a question of statutory construction, and in determining it the court searches for the intention of the legislature." *Rieck–McJunkin Dairy Co. v. Milk Control Commission of Pennsylvania*, 341 Pa. 153, 18 A.2d 868, 871 (1941). The public policy of this Commonwealth favors severability, and unless otherwise specified within the statute, the individual provisions of all statutes are presumptively severable. *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 968 (2003); *Annenberg v. Commonwealth*, 562 Pa. 581, 757 A.2d 338, 346 (2000). The Statutory Construction Act, 1 Pa.C.S. § 1925, provides:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statutes are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925.

¶ 32 Here, I do not find the preempted portions of 20 Pa.C.S. § 6111.2 to be "so essentially and inseparably connected with" the remedy provision to overcome the presumption that our legislature would have enacted the remedy provision had it known the other two clauses were void as applied to ERISA plan administrators.

The redesignation clause and prior restraint clause in their preempted applications attempt to govern a plan administrator's initial distribution of plan assets. By contrast, the remedy provision assumes that the plan administrator disregarded the redesignation clause, disbursing the insurance proceeds to the divorced spouse, and provides a cause of action to "any person prejudiced by the payment" to collect the proceeds from the divorced spouse.

¶ 33 Once the assets are distributed to the former spouse in accordance with the plan documents, ERISA is no longer impacted. However, the legislative intent that a divorced spouse should not retain a decedent's life insurance proceeds can still be achieved through the remedy provision, which can look to the redesignation clause for the expressed purpose of the statute.

¶ 34 The remedy provision, standing alone, is capable of execution in accordance with our legislature's intent. With the redesignation clause and prior restraint clause severed, as applied to ERISA administrators, the remedy provision is nonetheless operable, specifically requiring a divorced spouse to transfer life insurance proceeds to a person "prejudiced" by the payment. Despite severance, the remedy provision contains self-sustaining language that is capable of a statutory construction demonstrating a complete expression of legislative intent. To the extent the remedy provision's terms may appear vague or ambiguous, reference to the redesignation clause, which is no longer subject to preemption once the spouse receives the proceeds, clarifies our understanding of these terms. "[I]f a part of a statute is held to be unconstitutional, the language of that part may be referred to in order to clarify and sustain the part that is constitutional." *Commonwealth ex. rel. Schnader v. Great*

*American Indem. Co.*, 312 Pa. 183, 167 A. 793 (1933).

¶ 35 Thus, I concur in the result reached by the majority and conclude that this action can proceed because Appellee, the Estate of Paul J. Sauers, III, is proceeding against Appellant, Jodie L. Sauers, under the remedy provision of section 6111.2.