631 A.2d 1298

In re Catherine P. SHAHAN, Adult.

**Appeal of Ronald J. TOMCHIK.**

Superior Court of Pennsylvania.

Argued June 22, 1993.

Filed Aug. 13, 1993.

Reargument Denied Oct. 22, 1993.

94

Timothy G. Wojton, Pittsburgh, for appellant.

James F. Nowalk, Pittsburgh, for appellee.

Before OLSZEWSKI, HOFFMAN and BROSKY, JJ.

OLSZEWSKI, Judge:

This is an appeal from the Honorable Robert A. Kelly's order granting a $37,614.40 judgment in favor of Catherine P. Shahan ["Catherine"]. Catherine petitioned the Orphan's Court Division of the Allegheny Court of Common Pleas for an accounting and surcharge against Ronald J. Tomchik ["Tomchik"], alleging that he misallocated certain insurance proceeds while acting as administrator of her deceased son's ["John"] estate. We affirm.

John died intestate in Pennsylvania after he overdosed on drugs in late 1987. As John's sole intestate heir, Catherine was appointed to administer his estate. At the time, Catherine was approximately eighty years of age and living in South Carolina, which made administering John's estate understandably impractical. She therefore granted a durable power of attorney in favor of Tomchik, her daughter's boyfriend (now husband), who lived in Pennsylvania. The power of attorney provided in pertinent part:

> I, [Catherine], appoint [Tomchik] my true and lawful attorney-in-fact, for myself and in my name, place and stand for my use and benefit, to sign all documents necessary to handle the estate of John C. Shahan, and to receive and

accept on my behalf monies or proceeds and pay bills for the described estate.

The power of attorney was signed in October of 1987, and according to Tomchik, Catherine also signed a release which entitled him to collect insurance proceeds in the amount of $24,000.00 for a life insurance policy owned by John which named Catherine as beneficiary.[1] In March of 1988, Tomchik registered with the court of common pleas as administrator of John's estate. R.R. at 247A.

Tomchik thereafter collected insurance proceeds in the approximate amount of $48,000.00 ($24,000.00 pursuant to the policy mentioned above and $24,000.00 from another policy which was realized sometime after March 1988). He deposited these disbursements into his personal accounts, and his accounting indicates that he utilized some of the funds for satisfaction of the estate expenses, such as the funeral and a post-funeral luncheon. He used a substantial portion of the funds to satisfy John's outstanding illegal drug and gambling debts, and applied another portion to his and his wife's personal expenses. He was unable to account for approximately $17,000.00.

This dispute centers around whether Tomchik properly kept the portion of the proceeds not necessary to satisfy estate debts and whether he properly applied the insurance proceeds to the outstanding illegal drug and gambling debts. Catherine contends that the power of attorney gave Tomchik the right to act as administrator of the estate, and as such he had a fiduciary duty to apply estate funds in a reasonable and prudent manner. She claims that since insurance proceeds are not part of estate proceeds, Tomchik violated his fiduciary duty by applying them to John's illegal debts. Tomchik contends, however, that while the insurance proceeds are not part of the estate, Catherine intended, by executing the power of attorney, that the insurance proceeds would apply to satisfy

---

1. For some reason, however, Tomchik has not provided a copy of this document in the reproduced record, nor is it part of the original record provided to us. Even if we assume that what Tomchik asserts is true, he cannot prevail on this appeal.

*all* John's debts. Tomchik also contends that the portion of the insurance proceeds in excess of John's debts was meant to be a gift. Tomchik relies on his and several family members' testimony that Catherine indicated that she did not want to benefit from any proceeds from John's estate.

After a hearing on exceptions to Tomchik's accounting, the trial court found that Tomchik owed a fiduciary duty to Catherine and the estate, that the insurance proceeds were not part of John's estate, and that Tomchik did not act reasonably and prudently in his handling of the insurance proceeds. The trial court thus surcharged Tomchik for the value of his improper expenditures, ordering him to remit the funds to Catherine with interest calculated at six percent per annum. Tomchik raises a plethora of arguments on appeal from the order; we will address each below.

## I. Jurisdiction

Tomchik claims that the Orphan's Court Division of the Allegheny County Court of Common Pleas did not have jurisdiction. He contends that he is not a "fiduciary" under the Pennsylvania Estate and Fiduciary Code. He also argues that Catherine's claim is entirely distinct from his position as fiduciary to John's estate since it seeks remuneration of non-estate funds—insurance proceeds—incident to the power of attorney. This, he contends, divests the Orphan's Court Division of jurisdiction. We disagree.

■ Jurisdiction in the Orphan's Court Division is exclusively a matter of statute. *Estate of Soupcoff*, 329 Pa.Super. 130, 477 A.2d 1388 (1984). 20 Pa.C.S.A. § 711 requires the Orphan's Court Division to exercise mandatory jurisdiction in two pertinent situations:

> **(12) Fiduciaries.** The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphan's court division ...

*   *   *   *   *   *

**(17) Title to personal property.** The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of death.

*Id.*, §§ 711(12), (17).

The statutory definition of "fiduciary" includes the personal representative, *i.e.*, the administrator, of a decedent's estate. 20 Pa.C.S.A. § 102. Since Tomchik registered with the court of common pleas as the administrator of John's estate, any action contesting his accounting of funds incident to settling the estate comes squarely within the jurisdiction of the Orphan's Court. We find, as did the trial court, "particularly disingenuous" the argument that John's alleged liability to Catherine as her attorney-in-fact divests the Orphan's Court of jurisdiction. The power of attorney clearly limits Tomchik's role as attorney-in-fact to acts necessary to resolve John's estate matters. Thus, any funds Tomchik received as attorney-in-fact were limited to those he could procure as John's personal representative. Moreover, our Supreme Court has held that even though life insurance proceeds are not estate assets, the life insurance policies producing the proceeds are personal property of the decedent in his possession at death, vesting the Orphan's Court with jurisdiction to order the appropriate delivery of the proceeds. *Henderson's Estate*, 395 Pa. 215, 149 A.2d 892 (1959).

For these reasons, we find *Estate of Cantor*, 424 Pa.Super. 24, 621 A.2d 1021 (1993), relied on by Tomchik at oral argument, inapposite. In *Cantor*, we held that the Orphan's Court division of the court of common pleas did not have jurisdiction over a claim against an attorney-in-fact. *Id.* at 28, 621 A.2d at 1023. In that case, however, the principal granted the power-of-attorney for the purpose of controlling her financial affairs and sued the attorney-in-fact for alleged conversion of entrusted assets. Thus, under the jurisdictional statute, the Orphan's Court could not exercise non-mandatory jurisdiction over the action absent a factual averment that the principal was either

deceased, disabled, or incapacitated. *Id.,* 20 Pa.C.S.A. § 712(4).

Here, the Orphan's Court did not exercise non-mandatory jurisdiction over Catherine's claim. It found that jurisdiction was mandatory because, as we discuss above, Tomchik was a "fiduciary" under 20 Pa.C.S.A. § 711(12). Tomchik did not, as did the attorney-in-fact in *Cantor,* have control over Catherine's financial affairs. His acts were limited to those necessary as John's personal representative, and he was sued for improperly acting in that capacity. Moreover, even if Tomchik's role as attorney-in-fact is somehow distinct from his role as John's personal representative, the Orphan's Court may exercise non-mandatory jurisdiction over "[t]he disposition of any case where there are substantial questions concerning matters enumerated in section 711 ..." 20 Pa.C.S.A. § 712(3). Tomchik's role as attorney-in-fact is so intertwined with his role as fiduciary to John's estate (they are, in fact, identical) that his acts as fiduciary raise "substantial questions" necessary to resolve this lawsuit, rendering jurisdiction proper in any event. Tomchik's first claim fails.[2]

## II. Burdens of Proof and Sufficiency of Evidence

Tomchik next presents a series of arguments which amount to contentions that: (1) as attorney-in-fact he owed no fiduciary duty to Catherine; (2) the trial court erred in finding that he did not act as a reasonable and prudent person would have with respect to the insurance proceeds; and (3) the trial court erred by failing to find that Catherine made a gift of all insurance proceeds to him. We disagree.

Tomchik is correct in asserting that as an attorney in fact, he is Catherine's agent. *See generally, Estate of Livingston,* 531 Pa. 308, 612 A.2d 976 (1992). As an agent,

---

**2.** We therefore need not resolve the derivative claim that the Orphan's Court's exercise of jurisdiction deprived Tomchik of a trial by jury, since where jurisdiction in the Orphan's Court division is proper, he is not entitled to one. *See* 20 Pa.C.S.A. § 777(c) (Orphan's Court judge may impanel a jury to decide facts, but jury's findings are advisory only).

however, he is still a fiduciary with respect to his principal, Catherine:

> Under Pennsylvania law, the duty of an agent to his principal is one of loyalty in all matters affecting the subject of his agency, and the "agent must act with the utmost good faith in the furtherance and advancements of the interests of his principal." This duty is the same as that of fiduciary which has been described as the duty to act for the benefit of another as to matters within the scope of the relation.

*Garbish v. Malvern Federal Savings & Loan Assn.*, 358 Pa.Super. 282, 296, 517 A.2d 547, 553–554 (1986), *alloc. denied*, 516 Pa. 641, 533 A.2d 712 (1987) (citations omitted); *see Sutliff v. Sutliff*, 515 Pa. 393, 528 A.2d 1318 (1987). Thus, unless Tomchik holds himself out as an expert in estate administration (which he clearly does not), he is expected to exercise the care, skill, and judgment of an ordinarily prudent person under the circumstances. *Garbish, supra*, at 298, 517 A.2d at 555; *Estate of Lychos*, 323 Pa.Super. 74, 470 A.2d 136 (1983). The trial court viewed Tomchik's conduct with respect to Catherine by this standard; it is therefore irrelevant *why* the trial court concluded the fiduciary duty was owed.[3] Tomchik owed Catherine a fiduciary duty—in other words, a duty to administer John's estate as a reasonably prudent person would—whether he is being sued in his capacity as John's estate's personal representative or attorney-in-fact.[4]

The trial court found that Tomchik misrepresented the value of the insurance policies to Catherine. Catherine testified that Tomchik told her that he received $17,000.00 dollars in insurance proceeds on her behalf, of which he forwarded $10,000.00 directly to her. Thereafter, he deposited over $30,000.00 in insurance proceeds, which were payable to Catherine outside of the estate, into his own bank accounts. Then, after threats from hoodlums, Tomchik reimbursed drug push-

---

3. It is well-established that we may affirm the trial court on any ground, so long as it reaches the correct result. *Elder v. Nationwide Ins. Co.*, 410 Pa.Super. 290, 599 A.2d 996 (1991).

4. We note that despite his tireless efforts to distinguish between his relationship to the estate and his relationship to Catherine as attorney-in-fact, Tomchik seems to concede this point.

ers and gambling creditors for John's alleged debts. The trial court therefore concluded that Tomchik, by misrepresenting the value of the proceeds, paying illegal debts, and commingling the proceeds for personal use, violated his fiduciary duty.

"In reviewing the decision of the orphan's court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence." *Lychos, supra,* at 82, 470 A.2d at 140. After reviewing the record in this case, we find that the trial court's findings are supported by Catherine's testimony. We are not in a position, as Tomchik would ask, to reevaluate the witnesses' credibility. Moreover, since a fiduciary is under a duty to act solely on behalf of his principal, *Garbish, supra,* we agree with the trial court that Tomchik was under a duty, at a minimum, to inform Catherine of the true value of the insurance benefits. Therefore, the trial court did not err in surcharging Tomchik for the loss occasioned by his breach of fiduciary duty.

Likewise, we are constrained to hold against Tomchik regarding his contention that Catherine meant to give the proceeds to him as a gift. In order to establish a gift, the donor must intend to make an immediate gift and must actually or constructively make delivery of the gift to the donee so as to divest herself of dominion and control over the subject matter. *Lessner v. Rubinson,* 382 Pa.Super. 306, 555 A.2d 193 (1989), *aff'd,* 527 Pa. 393, 592 A.2d 678 (1991). Here, the trial judge found Catherine's testimony that Tomchik misrepresented the value of the insurance policies credible. He therefore concluded that since Catherine had no knowledge of the value of the policies, she could not have intended to divest herself of them. We agree with this conclusion. Mere presentation of contradictory testimony is no ground to reverse the court's factual finding.

## III. Evidentiary Findings

Finally, Tomchik claims that the trial court erred in admitting various testimony into evidence. We note at the outset

that evidentiary rulings are left to the sound discretion of the trial court and we may not reverse absent an abuse of discretion. *Yost v. Union Railroad Co.,* 380 Pa.Super. 236, 551 A.2d 317 (1988); *Majdic v. Cincinnati Machine Co.,* 370 Pa.Super. 611, 537 A.2d 334 (1988), *alloc. denied,* 520 Pa. 594, 552 A.2d 249 (1988). Furthermore, it is not enough for Tomchik to prove that the evidence was improperly admitted. He must also demonstrate that he was prejudiced by the erroneous admission. *Hamill–Quinlan, Inc. v. Fisher,* 404 Pa.Super. 482, 591 A.2d 309 (1991).

■ Tomchik contends that the trial court admitted improper hearsay testimony on two occasions. First, Tomchik claims that it was hearsay for Catherine to testify regarding her daughter's statement that "[t]here was more money coming and [Tomchik] stole it." Hearsay is an out-of-court statement offered to prove the truth of the matter it asserts. *Heddings v. Steele,* 514 Pa. 569, 526 A.2d 349 (1987). The record indicates, and Tomchik concedes, that this statement was elicited to explain Catherine's initial suspicion that Tomchik was receiving insurance benefits on her behalf. Since the statement was not admitted for its truth, but rather its effect on the listener, the statement was not hearsay.

■ Next, Tomchik claims that certain letters written by Catherine's former counsel were admitted for their truth and are thus hearsay. Catherine argued at trial that the documents were admitted to prove that she was in contact with her counsel.[5] We note, first, that Tomchik has not reproduced the letters, and the oral testimony in the record does not clearly indicate their content. In any event, Catherine's former counsel testified at trial regarding the letters. Since Tomchik's counsel had a full and fair opportunity to cross-examine the author of the letters, even if the letters were hearsay, their admission was harmless. *Printed Terry Finishing Co. v. City*

---

5. The parties do not make an effort to explain why this testimony was even relevant, and our review of the record does not offer enlightenment.

*of Lebanon,* 247 Pa.Super. 277, 372 A.2d 460 (1977).[6]

▮ Next, Tomchik argues that he should have been able to cross-examine one of Catherine's witnesses, Carl William Shahan, regarding John's gambling habits. The trial court denied Tomchik the opportunity to pursue this line of questioning because it exceeded the scope of Carl's direct testimony. The trial court has discretion to limit the scope and manner of cross examination. *See Commonwealth v. Tyler,* 402 Pa.Super. 429, 587 A.2d 326 (1991). Here, Carl was called to testify regarding his investigation into whether Tomchik received insurance proceeds on Catherine's behalf. He did not testify regarding the personal habits of John Shahan. Catherine's objections to questions in this regard were properly sustained.

▮ Tomchik claims that counsel should not have been entitled to use Catherine's deposition testimony to impeach her daughter. Our review of the record reveals that the deposition testimony was merely cumulative of Catherine's earlier testimony, and that the trial court allowed counsel to use the deposition rather than having the court reporter search for the transcription. We cannot hold that this was an abuse of the trial court's discretion in overseeing the manner of cross-examination.

▮ Finally, Tomchik claims that the trial court should not have permitted Catherine to inquire into matters regarding Tomchik's administration of John's estate. He claims that such questions were irrelevant. A matter is relevant if it tends to make a fact at issue more or less probable. *Hamill–Quinlan, supra.* Here, the only purpose of the power of

6. Tomchik also claims that he should have been entitled to ask Catherine's former attorney why their attorney/client relationship ended. Without addressing Tomchik's contention that by admitting the letters written by the attorney, Catherine waived her attorney/client privilege, we affirm the trial court's decision to disallow the question. Catherine's former attorney was called solely to establish Catherine's awareness of the investigation and circumstances surrounding the inception of this case. Any inquiry into confidential matters, waived or not, clearly exceeded the scope of direct examination and were therefore properly excluded.

attorney was to allow Tomchik to resolve John's estate. While we understand Tomchik's position that the power of attorney might have contemplated that he was entitled to satisfy estate debts with non-estate assets, Tomchik's handling of the estate was entirely relevant to determine whether he breached his fiduciary duty to Catherine as attorney-in-fact. The questions were therefore proper.

Order affirmed.