32 A.3d 1241

In re ESTATE OF Paul J. SAUERS, III, Deceased.

Appeal of Jodie L. Sauers.

Supreme Court of Pennsylvania.

Argued May 11, 2010.

Decided Nov. 23, 2011.

190

James G. Keenan, Hoffmeyer & Semmelman, L.L.P., York, for Jodie L. Sauers.

David Allan Mills, Blakey, Yost, Bupp & Raush, L.L.P., York, for William F. Sauers, Administrator of the Estate of Paul J. Sauers, III, Deceased.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice BAER.

In this appeal by allowance, we are called to decide whether, and to what degree, the federal Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (ERISA) preempts Section 6111.2 of the Pennsylvania Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 6111.2.[1] We have also agreed to

---

1. Section 6111.2 of the Probate Code provides as follows:

 **Effect of divorce on designation of beneficiaries.** If a person domiciled in this Commonwealth at the time of his death is divorced from the bonds of matrimony after designating his spouse as beneficiary of a life insurance policy [...], any designation in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased him unless it appears from the wording of the designation, a court order or a written contract between the person and such former spouse that the designation was intended to survive the divorce. Unless restrained by court order, no insurance company, pension or profit-sharing plan trustee or other obligor shall be liable for making payments to a former spouse which would have been proper in the absence of this section. Any former spouse to whom payment is made shall be answerable to anyone prejudiced by the payment.
 20 Pa.C.S. § 6111.2.
 For ease of discussion, we designate three specific portions of Section 6111.2 as follows:
 (1) *The redesignation clause:* "If a person domiciled in this Commonwealth at the time of his death is divorced from the bonds of matrimony after designating his spouse as beneficiary of a life insurance policy [...], any designation in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased him...."
 (2) *The prior restraint clause:* "Unless restrained by court order, no insurance company, pension or profit-sharing plan trustee or other obligor shall be liable for making payments to a former spouse which would have been proper in the absence of this section."

determine what we view as a preliminary question concerning whether an estate possesses the legal capacity to initiate a cause of action on behalf of a contingent beneficiary to a life insurance policy.[2] For the reasons that follow, we hold that while an estate may properly bring a cause of action on behalf of a contingent beneficiary to a life insurance policy in a county orphans' court seeking the proper distribution of assets, ultimately, ERISA preempts Section 6111.2 of the Probate Code. To the extent the *en banc* panel of the Superior Court held otherwise, we reverse and remand this appeal to that court for proceedings consistent with this opinion.

The factual and procedural histories of this case are undisputed. In June of 1997, Paul J. Sauers, III (Decedent), obtained a $40,000.00 life insurance policy from the Hartford Life Insurance Company, pursuant to an employee group benefit plan. The parties agree that the insurance policy is subject to all provisions of ERISA. On June 27, 1998, Decedent married Appellant, Jodie L. Sauers (Ex–Spouse), and named her as the primary beneficiary of the insurance policy. On October 13, 1998, Decedent designated his nephew, Ian D. Rehn, as a contingent beneficiary (Contingent Beneficiary) of the insurance policy. Almost four years to the date of their nuptials, on June 11, 2002, Decedent and Ex–Spouse divorced. Decedent passed away on September 19, 2006. At the time of

(3) *The private remedy clause:* "Any former spouse to whom payment is made shall be answerable to anyone prejudiced by the payment." We also note that Section 6111.2, along with other provisions of the Probate, Estates and Fiduciaries Code, was recently amended by act of the General Assembly. *See* Pa. Pub. Act No. 2010–85, § 4 (Oct. 27, 2010), effective Dec. 27, 2010. These revisions, however, have no bearing on the disposition of this appeal.

2. While the Superior Court viewed the capacity to sue issue as ancillary to the preemption question, we view it as a threshold matter that should be resolved prior to answering the preemption question. Indeed, preliminary objections of this nature could lead to the dismissal of an action in whole alleviating the need to consider the larger issue of preemption. *See Am. Hous. Trust, III v. Jones*, 548 Pa. 311, 696 A.2d 1181, 1184 (1997) (providing that a preliminary objection challenging a party's capacity to sue may lead to "the end result of . . . dismissal of the action."). Thus, we will speak to the issues presented in this appeal in the inverse order than as presented by the parties herein and the Superior Court below.

his death, the beneficiaries of the life insurance policy remained the same: Ex–Spouse as the primary beneficiary, and Mr. Rehn as the contingent beneficiary.

In February of 2007, William F. Sauers, administrator of Decedent's estate (Administrator), filed in the Orphans' Court of York County a petition for rule to show cause why primary beneficiary Ex–Spouse should not surrender to Contingent Beneficiary all interest in the proceeds of the insurance policy. Administrator contended that Contingent Beneficiary was entitled to the policy's proceeds in accord with 20 Pa.C.S. § 6111.2, *supra* note 1, because "any designation in favor of [a decedent's] former spouse which was revocable by [the decedent] after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased [decedent]. . . ." 20 Pa.C.S. § 6111.2.[3]

Ex–Spouse filed preliminary objections on March 30, 2007, and a motion to dismiss the petition for rule to show cause on April 25, 2007. The preliminary objections challenged, *inter alia:* (1) the Orphans' Court's subject matter jurisdiction to entertain the petition, *see* Pa. R.C.P. 1028(a)(1); and (2) Administrator's capacity to file the petition in the Orphans' Court on Contingent Beneficiary's behalf. *See* Pa. R.C.P. 1028(a)(5).[4] As a basis for both objections, Ex–Spouse contended that, because the insurance policy was not a testamentary document and thus had no bearing on the administration of an estate, it was improper for an administrator of an estate, or a court charged with supervision of that estate, to concern themselves with the policy or its proceeds. As for the motion

---

**3.** Despite the filing of the petition, on March 19, 2007, Hartford Life distributed the proceeds of the life insurance policy to Ex–Spouse as the primary beneficiary, in accord with the designations made on the instrument.

**4.** Pennsylvania Rule of Civil Procedure 1028(a) provides, in relevant part,

Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
(1) lack of jurisdiction over the subject matter of the action or the person of the defendant [. . .];
* * *
(5) lack of capacity to sue [. . .].

to dismiss, Ex–Spouse argued that regardless of any Pennsylvania statute to the contrary, ERISA mandates that the proceeds of the policy be paid to her as the primary beneficiary of the policy. *See* 29 U.S.C. § 1104(a)(1)(D) (providing that, with respect to ERISA-governed plans, plan administrators and fiduciaries shall discharge their duties, including payment of benefits, "in accordance with the documents and instruments governing the plan"). Accordingly, and because ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), Section 6111.2, directing that the life insurance proceeds by paid to Contingent Beneficiary as a matter of Pennsylvania law, was preempted and of no effect.

On April 27, 2007, the Orphans' Court denied both of Ex–Spouse's preliminary objections on identical grounds, finding that the Orphans' Court had subject matter jurisdiction and Administrator possessed the capacity to bring the petition for rule to show cause, because the petition concerned the right of the estate "to the proceeds of an insurance policy on [D]ecedent's life which [D]ecedent owned at the time of his death." Tr. Ct. Order Disposing of Preliminary Objections, Apr. 27, 2007, at 1–2 (citing *In re Henderson's Estate,* 395 Pa. 215, 149 A.2d 892 (1959)). Concerning the motion to dismiss, the Orphans' Court disagreed with Ex–Spouse that ERISA preempted Section 6111.2, because, under what is commonly known as the prior restraint clause of Section 6111.2, *see supra* note 1, plan administrators/fiduciaries cannot be held liable for "making payments to a former spouse which would have been proper in the absence of [Section 6111.2]." 20 Pa.C.S. § 6111.2; *see also* Tr. Ct. Slip Op. at 2; Notes of Testimony (N.T.), May 11, 2007, at 12–13 (announcing the decision of the court from the bench). As will be developed *infra,* the trial court accepted Administrator's argument that the plan administrator's statutory protection meant that she could distribute the insurance proceeds without state law constraining her actions. Thus, there was no conflict between the federal law's directive and state law.

Ex–Spouse filed a timely appeal to the Superior Court, averring error by the Orphans' Court in overruling the preliminary objections regarding its jurisdiction and Administrator's capacity to file the petition for rule to show cause, and in not finding Section 6111.2 preempted by ERISA. Originally, a three-judge panel of the Superior Court heard argument and issued an opinion, reversing the judgment of the Orphans' Court.[5] On July 17, 2008, however, the court granted reargument *en banc.* Upon reargument, the court affirmed the holdings of the Orphans' Court, determining that: the Orphans' Court had subject matter jurisdiction over the administration and distribution of Decedent's life insurance policy proceeds; Administrator possessed the legal capacity to initiate the proceedings against Ex–Spouse on Contingent Beneficiary's behalf; and Section 6111.2's general exemption of plan administrators from liability for distribution of life insurance proceeds to ex-spouses pursuant to the prior restraint clause saved the statute from preemption. *In re Estate of Sauers,* 971 A.2d 1265 (Pa.Super.2009) (*en banc*).

Judge Bowes concurred in part, and dissented in part (the CO/DO). Specifically, the CO/DO concurred in the *en banc* majority's conclusions regarding subject matter jurisdiction and Administrator's capacity to sue. On the issue of preemption, however, the CO/DO disagreed with the *en banc* majority that the prior restraint clause shielded Section 6111.2 from ERISA's broad preemption grasp. In the CO/DO's view, most of Section 6111.2 violated the preemption provisions of 29 U.S.C. § 1144(a), *supra* pp. 1246–47, because it infringed upon Congress' explicit mandates concerning uniform administration of ERISA-governed plans, and the distribution of benefits therefrom. Nevertheless, the CO/DO would have upheld the private remedy clause of Section 6111.2, *see supra* note 1, which permits a private cause of action by any individual prejudiced by the payment of proceeds to an ex-spouse. In the CO/DO's view, this clause was properly severable from the preempted portions of Section 6111.2, because it did not

5. Then–Judge, now-Justice, Orie Melvin participated in the panel consideration of this case.

implicate the concerns Congress expressed in passing ERISA. Judge Cleland concurred in the result, but without opinion.

We granted allowance of appeal to consider whether the courts below erred in denying Ex–Spouse's preliminary objection as to capacity to sue, and further "whether, and to what degree, [ERISA] preempts Section 6111.2 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § [6111.2]?" *In re Estate of Sauers*, 603 Pa. 58, 981 A.2d 1279 (2009) *(per curiam )*.[6] Concerning Ex–Spouse's preliminary objection to Administrator's capacity to sue, "we observe that preliminary objections, the end result of which would be dismissal of the action, may be properly sustained by the trial court only if the case is free and clear of doubt." *Am. Hous. Trust, III v. Jones*, 548 Pa. 311, 696 A.2d 1181, 1184 (1997).[7] Issues of preemption comprise pure questions of law, of which the standard of review is *de novo* and the scope of review plenary. *Dooner v. DiDonato*, 601 Pa. 209, 971 A.2d 1187, 1193 (2009).

As noted above, in the courts below Ex–Spouse challenged both the Orphans' Court's subject matter jurisdiction over this dispute, as well as Administrator's capacity to initiate it. Before this Court, however, Ex–Spouse only raises Administrator's capacity to sue. The basis of Ex–Spouse's contentions in this regard centers around the assertion that the insurance policy is merely an employee benefit plan, and not testamentary in nature. To that end, Ex–Spouse contends that, under 20 Pa.C.S. § 6108(a), who is and who is not

6. We note that, concerning the denial of her preliminary objections, Ex–Spouse has only forwarded a claim of error in this Court regarding the lower courts' finding that Administrator possesses capacity to sue; she has not sought review of those tribunals' conclusion that the Orphans' Court possessed subject matter jurisdiction over this matter.

7. We further must note our respectful disagreement with our distinguished colleague, Mr. Justice Eakin, concerning the mootness of the capacity to sue issue. In concurrence, Justice Eakin opines that we need not decide whether Administrator possesses the capacity to bring the instant action because the ERISA preemption question controls the outcome of this appeal. In our view, the capacity to sue question is a threshold matter, which must be decided before reaching the question of ERISA preemption. If Administrator lacked capacity to sue, there is no plaintiff and the case should have been dismissed without a merits (ERISA) analysis.

designed a beneficiary of life insurance or an employee-benefit plan "shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will. . . ." Ex–Spouse then argues that in light of this statutory language, it is clear that this case involves nothing more than the applicability of federal law as to who is a rightful designee/beneficiary. Further, according to Ex–Spouse, no estate assets are concerned in this appeal—only insurance proceeds are. Thus, under Ex–Spouse's reasoning, Administrator had no authority upon which to bring the instant action in the. Orphans' Court.

Administrator simply responds by noting that whether the rule should issue under Section 6111.2 or not, he still possesses the capacity to bring the petition, as capacity only involves a person's ability to come into court. Brief of Administrator at 22 (citing *Witt v. Dep't of Banking,* 493 Pa. 77, 425 A.2d 374, 377 n. 7 (1981) ("The capacity to sue is the right to come into court; if he sues as a representative, [then] he shall possess the character in which he sues. It is distinguished from standing to sue which is a right to relief, which goes to the existence of the cause of action.")). To that end, Administrator argues that the life insurance policy was Decedent's personal property at the time of his death, *see Henderson's Estate,* 149 A.2d at 900, and, as personal representative of the estate, he is charged with the responsibility of delivering personal property to the correct descendant or heir. *See* 20 Pa.C.S. § 3311(a) ("A personal representative shall have the right to and shall take possession of, maintain, and administer all the real and personal estate of the decedent. . . .").

 In a general sense, capacity to sue refers to the legal ability of a person to come into court, and "[w]ant of capacity to sue has reference to or involves only a general legal disability, . . . such as infancy, lunacy, idiocy, coverture, *want of authority,* or a want of title in plaintiff in the character in which he or she sues." 67A C.J.S. *Parties* § 11 (emphasis added). The quintessential example of someone who lacks capacity to sue or be sued is a deceased person, as capacity only exists in living persons. *Id.* In substance, as well as in

practice, however, the notion of capacity to sue is extremely amorphous. Indeed, this Court has previously referred to the blurry distinction between capacity to sue and standing as a "somewhat metaphysical question." *Witt*, 425 A.2d at 377 n. 7. Obviously, Ex–Spouse has not, and indeed cannot, allege that Administrator lacked the capacity to file the petition for rule to show cause due to Administrator's status as an infant, lunatic, or deceased person. Rather, the thrust of Ex–Spouse's contentions revolve around Administrator's authority to seek the rule to show cause (1) in a county orphans' court, and (2) on behalf of a third party, *i.e.*, Contingent Beneficiary.

 Orphans' Court divisions of the various courts of common pleas are charged with the "administration and distribution of the real and personal property of decedents' estates...." 20 Pa.C.S. § 711(1). Orphans' Courts must also adjudicate disputes concerning the title and rightful possession of a decedent's property. *Id.* While life insurance benefits are not estate assets, *see id.* § 6108, Pennsylvania courts have previously held that the life insurance policies from which proceeds are distributed are the decedent's personal property at the time of his death. *See Henderson's Estate*, 149 A.2d 892; *In re Shahan*, 429 Pa.Super. 91, 631 A.2d 1298 (1993). Thus, administrators of estates are charged with taking possession of, maintaining, and administering these assets, *see* 20 Pa.C.S. § 3311(a), and the Orphans' Courts are vested with the authority to ensure the proper distribution of insurance proceeds. *Henderson's Estate; Shahan.* Therefore, Administrator, as the representative of Decedent's estate, certainly held the authority, and thus possessed the capacity, to file the petition for rule to show cause in the York County Orphans' Court seeking the proper distribution of Decedent's personal property.[8] Accordingly, we find no error

8. We recognize the salient point by our esteemed colleague, Mr. Justice Saylor, that the *Henderson's Estate* and *Shahan* decisions did not directly concern one's capacity to bring suit in the Orphans' Court. Nevertheless, we do view these cases as providing sufficient legal support for our conclusion that Administrator possessed the legal authority to bring a cause of action against Ex–Spouse.

by the courts below in overruling Ex–Spouse's preliminary objection.

The threshold matter of Administrator's capacity to sue resolved, we now turn to the principal contention of this appeal: whether ERISA preempts Section 6111.2 of the Probate Code. Federal preemption has its origin in the Supremacy Clause of Article VI of the United States Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST., Art. VI, cl. 2. Under the Supremacy Clause, state laws in conflict with acts of Congress are "without effect." *Altria Group, Inc. v. Good,* 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008). In determining whether a federal statute preempts a state law, "the purpose of Congress is the ultimate touchstone in every preemption case." *Id.* (internal citations and quotations omitted). There exists, however, a general presumption against federal preemption, such that "the historic police powers of the state are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." *In re Novosielski,* 605 Pa. 508, 992 A.2d 89, 99 (2010).

That clear and manifest purpose can be found in three forms. First, "Congress may indicate preemptive intent through a statute's express language or through its structure and purpose." *Altria,* 129 S.Ct. at 543. The existence of an express preemption clause does not end the analysis however, "because the question of substance and scope of Congress' displacement of state law still remains." *Id.* Second, preemption may be inferred from a federal statute, "if the scope of the statute indicates that Congress intended federal law to occupy the legislative field...." *Id.* Finally, "even where Congress has not completely displaced state regulation in a

specific area, state law is nullified if there is a conflict between state and federal law." *Dooner,* 971 A.2d at 1194 (citing *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)).

Instantly, ERISA contains an express provision, stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" controlled or covered by ERISA. 29 U.S.C. § 1144(a). Accordingly, this appeal concerns only express preemption. Consistent therewith, the United States Supreme Court has noted, with regard to Section 1144(a) preemption, "that this broadly worded provision is clearly expansive." *Egelhoff v. Egelhoff,* 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (internal citations and quotations omitted). Nevertheless, the High Court has "recognized that the term 'relate to' cannot be taken to extend to the furthest stretch of its indeterminacy, or else for all practical purposes preemption would never run its course." *Id.* (internal citations and quotations omitted). Regarding the "relate to" association, the Court has further elaborated, "to determine whether a state law has a forbidden connection [to ERISA], we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 147, 121 S.Ct. 1322. (internal citations and quotations omitted).

■■■ When enacting ERISA in 1974, Congress found that "the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial," rendering the "scope and economic impact of such plans" increasingly more interstate and national in nature. 29 U.S.C. § 1001(a). A key purpose of ERISA, therefore, is to provide uniform administrative schemes for employers, plan administrators, and fiduciaries to follow in administering and processing employee benefit plans. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

Consistent with this purpose, ERISA does not foreclose state legislation and regulation that manages only employee benefits; rather, ERISA solely governs the broader notion of employee benefit plans. *Id.* at 7–8, 107 S.Ct. 2211. According to the Supreme Court of the United States, an "employee benefit plan" is characterized by the "ongoing, predictable nature of [an] obligation therefore creat[ing] the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis." *Id.* at 15 n. 9, 107 S.Ct. 2211. Contrarily, when a state statute does not require, establish, or regulate an ongoing payment program, the concerns of ERISA are not implicated, as generally only the employee benefits are at issue. *Id.* Thus, as a preliminary matter, if Section 6111.2 does not implicate employee benefit plans, but instead concerns only the one-time payment of a policy benefit, the express preemption provision of ERISA is of no effect to Section 6111.2.

Unfortunately, the parties' arguments regarding this initial, but vital, matter are sparse. Nevertheless, Ex–Spouse contends throughout her brief that no party refutes that the insurance policy at issue is an ERISA-governed plan. To that end, Ex–Spouse notes that Decedent "participated as an employee in an employer sponsored benefit plan which included the life insurance policy subject to the instant action which was qualified under ERISA." Brief of Ex–Spouse at 7.

Administrator counters that, under *Egelhoff* and *Fort Halifax*, ERISA preemption exists only in regard to employee benefit plans and the state laws that implicate those plans; thus, if a state law relates solely to employee benefits, preemption should not be found. *See Fort Halifax*, 482 U.S. at 11, 107 S.Ct. 2211 (prime ERISA concern of uniformity "only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress preempted state laws relating to *plans*, rather than simply to *benefits*.") (emphasis in original); *see also Pappas v. Asbel*, 564 Pa. 407, 768 A.2d 1089 (2001) (noting that the primary goal

of ERISA is the uniform administration of employee benefit plans). Administrator interprets Section 6111.2 as having no connection with ERISA "plans," simply because "ERISA" appears nowhere in the text of Section 6111.2. Rather, argues Administrator, Section 6111.2 "refers to" a variety of different benefits packages, including annuities, life insurance policies, and profit sharing plans, yet does not on its face speak to ERISA-related plans. Further, Administrator asserts that Section 6111.2 only "relates to distributing benefits upon the death of a decedent," and nothing more. Brief of Administrator at 10. Accordingly, in Administrator's view, ERISA does not control this matter.

While Congress defined what is, and is not, a benefit plan in a fairly circular manner, *see* 29 U.S.C. § 1002(1)-(3), the *Fort Halifax* Court provided much guidance on this issue. In that case, the state of Maine enacted a statute requiring an employer, which employed 100 or more people to make a one-time severance payment to its employees should it shut its doors. In the early 1980s, the Fort Halifax Packaging Company (FHPC), a corporation of over 100 employees, did just that, resulting in several terminated employees suing in a Maine state court for the statutory severance pay. FHPC challenged the suits, alleging that the state law was preempted by ERISA, because the law mandated the creation of an employee benefit, something that FHPC contended only Congress could do because of the superseding provisions of Section 1144(a) of ERISA. *See* 29 U.S.C. § 1144(a), *supra* pp. 1246-47.

Despite the broad expanse of ERISA preemption, the United States Supreme Court upheld the Maine statute. The Court first reiterated the key purpose of ERISA preemption: the uniform administration of employee benefit plans. *Fort Halifax*, 482 U.S. at 9, 107 S.Ct. 2211. As noted above, however, the High Court held that such a concern "only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress preempted state laws relating to *plans*, rather than simply to *benefits*."

*Id.* at 11, 107 S.Ct. 2211 (emphasis in original). In applying this construct to the *Fort Halifax* facts, the Supreme Court determined that the Maine severance statute required only a one-time lump sum payment to employees who lost jobs and therefore implicated an employee benefit, and not a benefit plan, which, by its nature, would require constant administration. In a footnote, the Court made the distinction even more clear:

> [FHPC] notes that death benefits sometimes involve a one-time payment to beneficiaries, and that ERISA nonetheless defines an employee welfare benefit plan to include a program that pays such benefits. 29 U.S.C. § 1002(1). Thus, it contends, the fact that the Maine statute requires a single payment does not mean that the statute does not establish a plan. This argument, however, misunderstands what it is that makes a plan a plan. While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis. The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis. This is borne out by the fact that death benefits are included in appellant's retirement plan, with instructions on how eligibility is to be determined, benefit levels calculated, and disbursements made. By contrast, appellant's statutory obligation did not prompt the establishment of any payment program, since there were no ongoing benefits to be paid.

*Id.* at 15 n. 9, 107 S.Ct. 2211.

In the instant case, the plan administrator of Decedent's life insurance policy (Hartford Life), on Decedent's employer's behalf, is required to make regular payments to multiple survivors of multiple deceased members of a benefit plan on an ongoing basis. Thus, on this preliminary matter, we find that the disbursement of life insurance proceeds constitutes the ongoing administration of an employee benefit

plan, and not merely the one-time payment of benefits. *Accord Id.*

■■■ The initial issue of "a one-time benefit versus a plan" aside, we still must examine whether Section 6111.2 frustrates the uniformity mandates of ERISA by looking to the objectives of ERISA, and Section 6111.2's effect on ERISA-governed plans. As noted, the courts below held that the prior restraint clause of Section 6111.2 saves the state law from preemption because "the Pennsylvania legislature accomplished the policy objective of re-designation of beneficiaries after divorce ... while enabling ERISA plan administrators to perform their functions as specified in ERISA and without limitation by Pennsylvania law." *Estate of Sauers,* 971 A.2d at 1271. Stated differently, the Orphans' and Superior Courts held that because a plan administrator cannot generally be held liable for following plan documents instead of the explicit mandates of Pennsylvania law, there is no danger to the uniformity requirements of ERISA.

As noted earlier, ERISA came to fruition due to the increasing need for a uniform and nationwide system of regulation and administration of employee benefit plans by and for employers, plan administrators, and fiduciaries. *See Fort Halifax,* 482 U.S. at 9, 107 S.Ct. 2211. "Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States." *Id.* In accord with such mandates, then, the High Court "ha[s] not hesitated to enforce ERISA's preemption provision where state law created the prospect that an employer's administrative scheme would be subject to conflicting requirements." *Id.* at 10, 107 S.Ct. 2211.

Under ERISA, plan administrators and fiduciaries are required "to discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries, ... *in accordance with the documents and instruments governing the plan....*" 29 U.S.C. § 1104(a)(1)(D) (emphasis added). Relevant to this case, the plan administrator of Decedent's life insurance policy (which, again, the parties do not dispute falls

under ERISA) followed the mandate of Section 1104(a)(1)(D): the insurance policy (the plan document) declared Ex–Spouse as the primary beneficiary and, thus, Hartford Life distributed the proceeds of the policy to her.

In arguing for the application of Section 1104(a)(1)(D) and in favor of preemption, Ex–Spouse cites almost exclusively to the recent United States Supreme Court case of *Egelhoff v. Egelhoff, supra,* pp. 1249–50. The facts in *Egelhoff* are extremely similar to those presented here. There, David A. Egelhoff had opted into an employee benefit pension plan and insurance policy, both of which were governed by ERISA. He designated his wife, Donna Rae Egelhoff, as the primary beneficiary. Mr. and Mrs. Egelhoff eventually divorced and, shortly thereafter, Mr. Egelhoff died intestate; Mr. Egelhoff never removed his ex-wife as the primary beneficiary. Thus, under the designations of the plan documents, Mrs. Egelhoff was paid the proceeds of the ERISA pension plan and insurance policy.

Children of Mr. Egelhoff from a prior marriage filed suit, contending that Mrs. Egelhoff had no right to the proceeds of the ERISA plans. In support thereof, the children cited to Section 11.07.010(2)(a) of the Washington Revised Code, which provided,

> If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.

Wash. Rev.Code § 11.07.010(2)(a) (1994). The Washington law also exempted plan administrators from liability for paying named beneficiaries, unless the administrators had "actual knowledge of the dissolution or other invalidation of marriage...." *Id.* § 11.07.010(3)(a) (1994). Under these provisions, Mr. Egelhoff's children argued that, because of the

divorce between Mr. and Mrs. Egelhoff, Mrs. Egelhoff must be treated as pre-deceased for purposes of the benefits from the ERISA plans. Accordingly, the children contended that because their father died intestate, as the next surviving heirs, they were entitled to the ERISA plans' benefits.

Various Washington state courts, including the Washington Supreme Court, agreed. The United States Supreme Court reversed, however, finding that ERISA preempted Section 11.07.010(2)(a). As noted above, the Court determined that a state statute possesses an impermissible connection with ERISA, and thus is preempted, if the state statute "binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. [Under the Washington statute, t]he administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Egelhoff,* 532 U.S. at 147, 121 S.Ct. 1322. Accordingly, the Washington statute "implicate[d] an area of core ERISA concern," by running afoul of ERISA's mandate that plan administrators shall administer ERISA plans "in accordance with the documents and instruments governing the plan." *Id.* (quoting 29 U.S.C. § 1104(a)(1)(D)).

Moreover, the Washington statute impermissibly hindered a primary goal of ERISA: the uniform administration of employee benefit plans nationwide. *Id.* at 148, 121 S.Ct. 1322 (quoting *Fort Halifax,* 482 U.S. at 9, 107 S.Ct. 2211 (a principal goal of ERISA is to permit employers "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.")). The High Court determined that ERISA prohibited states from implementing their own rules for disbursement of employee benefit plan funds by providing for such disbursement of funds "in accordance with the documents and instruments governing the plan." *See id.* at 150, 121 S.Ct. 1322; 29 U.S.C. § 1104(a)(1)(D). The High Court noted that should statutes such as Washington's remain viable, plan administrators would be forced to

familiarize themselves with state statutes so that they can determine whether the named beneficiary's status has been

"revoked" by operation of law. And in this context the burden is exacerbated by the choice-of-law problems that may confront an administrator when the employer is located in one State, the plan participant lives in another, and the participant's former spouse lives in a third. In such a situation, administrators might find that plan payments are subject to conflicting legal obligations.

*Id.* at 148–49, 121 S.Ct. 1322.

Finally, the Supreme Court held that the portion of the Washington statute that protected "administrators from liability for making payments to the named beneficiary unless they have 'actual knowledge of the dissolution or other invalidation of marriage,'" *id.* at 149, 121 S.Ct. 1322 (quoting Wash. Rev.Code § 11.07.010(3)(a) (1994)), did not shield the statute from preemption. The Court found that while plan administrators might ultimately be immune from liability, they faced a never-ending possibility of lawsuits questioning their compliance with the Washington statute, again frustrating the goal of uniform administration of ERISA plans. On these bases, the Supreme Court found the Washington statute preempted by ERISA.

Connecting *Egelhoff* with this case, Ex–Spouse contends that the High Court has made clear that Section 6111.2, the Pennsylvania statute at issue and controlling the manner in which a plan administrator distributes proceeds of an ERISA plan, cannot withstand a preemption challenge. Similar to the Washington statute, Ex–Spouse argues that Section 6111.2 specifies that plan administrators shall ignore the unmodified designation of beneficiaries on an ERISA plan instrument, if the beneficiary is the ex-spouse of the decedent. By mandating how a plan administrator must distribute ERISA-plan benefits, Ex–Spouse asserts that Section 6111.2 "implicates an area of core ERISA concerns," *Egelhoff,* 532 U.S. at 147, 121 S.Ct. 1322, and thus is preempted.

Administrator counters that the Superior Court correctly distinguished the instant case from *Egelhoff* because of the prior restraint clause of Section 6111.2:

Unless restrained by court order, no insurance company, pension or profit-sharing plan trustee or other obligor shall be liable for making payments to a former spouse which would have been proper in the absence of this section.

Administrator argues that the prior restraint clause negates Ex–Spouse's contention that Section 6111.2 mandates plan administrators to follow state law by distributing proceeds contrary to the ERISA-plan documents, because a plan administrator cannot be found liable for making payment to an ex-spouse. In other words, plan administrators may follow the rules of ERISA because Pennsylvania law provides immunity to them for any noncompliance with Section 6111.2's mandates. Thus, Administrator contends Section 6111.2 does not implicate an area of core ERISA concern, because the danger of losing nationwide uniformity is not present. The plan administrator can still distribute proceeds in accord with ERISA, and any party that disputes the ultimate payment can seek recourse from the paid beneficiary.

In our view, Administrator's contention (and the lower court's holdings) that a plan administrator/fiduciary cannot be held liable for choosing to follow either state or federal law in administering an ERISA plan document does not mean that Section 6111.2 does not "relate to" ERISA. As has been noted throughout, plan administrators are first and foremost fiduciaries, and must "discharge [their] duties with respect to a[n ERISA] plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Such fiduciary duties explicitly extend to the discretionary authority or responsibility a plan administrator has over an ERISA plan. *Id.* § 1002(21)(A)(i)-(iii). In so doing, plan administrators must also act in good faith when exercising that discretion, by performing their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). Of particular concern within this appeal, plan administrators are required, by federal law (*i.e.,* ERISA), to discharge their fiducia-

ry duties in accord with the plain language of the ERISA plan documents. *Id.* § 1104(a)(1)(D).

Moreover, no immunity protection exists under ERISA should a plan administrator fail in his fiduciary obligations, as those obligations are defined by federal law. Instead, plan administrators are subject to civil liability in federal court upon contravening their fiduciary duties:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

*Id.* § 1109(a). Indeed, participants in, or beneficiaries to, ERISA-governed plans are empowered to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Under Section 1132, then, plan administrators are subject to federal liability should a court find they acted in an arbitrary and capricious manner by interpreting an ERISA plan document in a manner which is improper as a matter of federal law. *See Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993) ("Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.") (internal citations and quotations omitted).

Additionally, while ultimately a plan administrator may avoid state law liability for any disobedience of Section 6111.2, the prior restraint clause may not stop estate administrators, jilted heirs, or disappointed survivors from initiating actions in

state court against a plan administrator or fiduciary in multiple circumstances, because plan administrators may still be "restrained by court order" in administering the ERISA plan according to the plan documents. 20 Pa.C.S. § 6111.2. Thus, under Section 6111.2, state courts may have the power to order a plan administrator or fiduciary not to follow the mandates of ERISA Section 1104(a)(1)(D); put differently, Section 6111.2 gives a Pennsylvania court the power to enjoin a plan administrator from discharging his fiduciary duties in accord with federal law, while concomitantly subjecting the plan administrator to civil liability in federal court. This Hobson's choice, of being forced to choose between applying either state or federal law, at the potential peril of disregarding a state court order to evade federal liability, is exactly what the preemption provisions of Section 1144(a) of ERISA, as interpreted by the *Egelhoff* and *Fort Halifax* Courts, intended to avoid. Such potential not only "relates to," but also surely violates, the uniformity requirements and objectives of ERISA.

Further, one must keep in mind that, as pointed out by the *Egelhoff* Court, no guarantee exists that employee benefit plans for Pennsylvania-based employees will be managed by Pennsylvania employers or fiduciaries. *See Egelhoff,* 532 U.S. at 148–49, 121 S.Ct. 1322 (noting the "choice-of-law problems that may confront an administrator when the employer is located in one State, the plan participant lives in another, and the participant's former spouse lives in a third."). Permitting statutory schemes such as Section 6111.2 to remain viable would force fiduciaries to "maintain a familiarity with the laws of all 50 States so that they can update their plans as necessary.... This 'tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction' is exactly the burden ERISA seeks to eliminate." *Id.* at 151, 121 S.Ct. 1322 (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

Finally, Section 6111.2, through the redesignation clause, simply changes the beneficiary of an ERISA-governed plan in cases where the ex-spouse retains the position of primary

designation. Unquestionably, this has a substantial effect on ERISA-governed plans. While the plan administrator may be immune from state law liability if she disburses the proceeds of the ERISA plan to the ex-spouse, Section 6111.2 still alters Congress' explicit intent to keep uniform, throughout the nation, the payment of ERISA plan benefits to the designated beneficiary. *See* 29 U.S.C. § 1104(a)(1)(D).

■ Accordingly, we disagree with Administrator and the courts below that, because of the prior restraint clause, the instant appeal is distinguishable from the preemption findings of *Egelhoff*. While we recognize that, in many situations, plan administrators and fiduciaries may escape state law liability for disbursing funds in compliance with the designations made on plan documents rather than in accord with Pennsylvania law, a plan administrator cannot escape ERISA liability for following Section 6111.2. We further observe that, in all practicality, should statutory schemes such as Section 6111.2 survive preemption challenges, plan administrators will be forced to educate themselves in individual state laws and practices in order to effectuate their fiduciary duties of disbursing ERISA plan proceeds to the proper parties. Consequently, we hold that Section 6111.2, in its entirety,[9] implicates

9. We further disagree, respectfully, with the CO/DO below, which would have found the private remedy clause severable from the preempted portions of Section 6111.2. While portions of statutes may be separated from parts to be found preempted or unconstitutional, *see e.g. Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 986 (2003); 1 Pa.C.S. § 1925, severability is not available when the remainder of the statute is "so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining provisions without the void one." 1 Pa.C.S. § 1925.

As noted above, Section 6111.2 is preempted partly because it re-designates the primary beneficiary of an ERISA-governed plan. Because ERISA plans must be administered in accordance with the plain language of the plan instrument, 29 U.S.C. § 1104(a)(1)(D), should that language mandate that an ex-spouse receive the plan's benefits, then, simply, no person has been prejudiced by the ex-spouse's receipt of those benefits. In other words, the provision providing for a private cause of action is wholly dependent upon Section 6111.2 controlling ERISA plans. As Section 6111.2 cannot have such control, the private remedy clause of Section 6111.2 cannot survive, either.

a core area of ERISA concern, such that it impermissibly "relates to" ERISA. *Accord* 29 U.S.C. § 1144(a).

In conclusion, while we find that Administrator possessed the legal capacity to file a petition for rule to show cause in the York County Orphans' Court seeking the disbursement of Decedent's insurance proceeds to Contingent Beneficiary, we ultimately hold that Section 6111.2, which would have placed those proceeds in Contingent Beneficiary's hands, is superseded by the vast reach of the federal ERISA statute. Thus, the courts below erred as a matter of law by ordering Ex–Spouse, the named and unmodified primary beneficiary of the ERISA-governed insurance policy, to surrender all entitlement and interests in the proceeds of that policy. Accordingly, we reverse the order of the Superior Court in that regard, and remand this case to that court for proceedings consistent with this opinion.

Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a concurring and dissenting opinion.

Justice SAYLOR, concurring.

I join the majority's well-reasoned decision on the preemption issue.

However, I question its separate holding that an estate administrator has the authority to attempt to redirect the proceeds of a life insurance policy from a named beneficiary to a named contingent beneficiary, *see* Majority Opinion at 197–99, 32 A.3d at 1248–49, at least in the absence of exceptional circumstances. In this regard, I agree with Appellant's position that a personal representative's authority is circumscribed by statute, *see* 20 Pa.C.S. § 3311, and generally would not

include involvement in the resolution of disputes over non-estate assets, such as the proceeds of life insurance policies as to which the estate lays no claim. *Accord Irwin v. Irwin*, 307 S.W.3d 383, 386 (Tex.App.2009) (holding that an estate lacked standing to pursue a claim against a deceased employee's former wife for a constructive trust on life insurance proceeds); *Deaton v. Cross*, 184 F.Supp.2d 441, 442 (D.Md.2002) (explaining, similarly, that a personal representative had no standing to pursue redirection of life insurance proceeds outside an estate).[1] Indeed, it seems incongruous that beneficiaries and/or creditors of an estate would be made to bear the expense of litigation not conducted for their collective interest.

I also do not regard the decisions referenced by the majority as controlling as to capacity, authority, or standing of an administrator. Neither *In re Henderson's Estate*, 395 Pa. 215, 149 A.2d 892 (1959), nor *In re Shahan*, 429 Pa.Super. 91, 631 A.2d 1298 (1993), concerned the authority of the personal representative of an estate to initiate judicial proceedings relative to non-estate assets to which the estate lays no claim. Rather, in relevant part, both concerned the jurisdiction of the orphans' courts. *See Henderson's Estate*, 395 Pa. at 229–32, 149 A.2d at 899–901; *Shahan*, 429 Pa.Super. at 96–98, 631 A.2d at 1301–02. On this separate matter, I do agree with the majority that the court's jurisdiction was secure under *Henderson's Estate*.

Justice EAKIN, concurring and dissenting.

I join the majority's holding that ERISA preempts § 6111.2 of the Probate Code. In light of this conclusion, however, I would dismiss as moot the issue regarding an estate administrator's capacity to sue.

1. There is some lack of clarity here, because the question presented has been framed in terms of the "capacity" of the administrator, which has been distinguished from "standing," albeit the distinction has been couched by some Justices at least as "metaphysical." *Witt v. Dep't of Banking*, 493 Pa. 77, 83 n. 7, 425 A.2d 374, 377 n. 7 (1981) (opinion in support of remand). In any event, Appellant's brief makes clear that her treatment of capacity and standing overlaps. *See* Brief for Appellant at 22.

According to the majority, the latter argument concerns the administrator's "authority" to sue on behalf of the contingent beneficiary.[1] *See* Majority Op., at 199, 32 A.3d at 1249. The majority accepts the Administrator's argument that a life insurance policy is the decedent's personal property and concludes the Administrator, as the decedent's personal representative, had the authority to challenge the disbursement of an ERISA plan's life insurance proceeds in orphan's court.

However, the majority's conclusion that an estate administrator has such authority appears inconsistent with the holding that ERISA preempts the statute, and I cannot join that holding. The majority, citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), properly determines ERISA preempts § 6111.2 in part because plan administrators applying the state statute would face "a never-ending possibility of lawsuits," which would frustrate the goals of ERISA. *See* Majority Op., at 208, 32 A.3d· at 1254–55; *cf. Egelhoff.* One of ERISA's goals is to "establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff,* at 148, 121 S.Ct. 1322 (quoting *Fort Halifax Packing Co. Inc. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). An ERISA plan must be administered "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). While plan administrators may be subject to civil liability in federal court for contravening their fiduciary duties, probate challenges under state law are inapplicable where, as in the instant case, ERISA preempts the Probate Code.

1. I agree with Justice Saylor that the parties and the courts below failed to distinguish capacity and standing. *See* Concurring Op., at 214 n. 1, 32 A.3d at 1258 n. 1 (Saylor, J., concurring). Indeed, Appellant conflates the concepts of standing and capacity in her brief, using the terms interchangeably. Likewise, the majority opinion does not clarify the issue but contends legal capacity is "extremely amorphous" and the "blurry distinction between capacity to sue and standing [i]s a 'somewhat metaphysical question.'" Majority Op., at 199, 32 A.3d at 1249. The majority merely characterizes Appellant's capacity argument as a question of authority, which does not make the distinction less blurry—as such, I believe it is best put aside, particularly as it is made irrelevant by resolution of the preemption issue.

216

In the end, the majority concludes the ERISA plan document controls the disbursement of the life insurance proceeds. Accordingly, the issue of whether an estate administrator has the capacity to sue on behalf of a life insurance contingent beneficiary in orphan's court is not relevant to the disposition of the instant case.